**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170462-U

Order filed April 29, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0462 Circuit No. 16-CF-345 |
| | ) | |
| JAMES R. BANKS, | ) ) | Honorable Stephen A. Kouri, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justice Wright specially concurred, joined by Justice Schmidt.

_____

**ORDER**

¶ 1     *Held*:   Sentence following probation revocation was not based on improper factors.

¶ 2     Defendant, James R. Banks, appeals following his conviction for unlawful possession of a controlled substance. After initially being sentenced to a term of probation, the court sentenced defendant to 5½ years' imprisonment after that probation was revoked. Defendant argues that the sentence imposed by the court, coupled with the court's comments in imposing sentence,

indicate that the court punished him for his behavior while on probation, rather than for his original offense. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4        The State charged defendant via indictment with one count of Class 4 unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). Defendant entered a plea of guilty in exchange for a sentence of 18 months' probation. As a factual basis for the plea, the State averred that defendant fled from the police and, while running, discarded a small amount of cocaine. The court accepted defendant's plea and sentenced him to a term of 18 months' probation. Among the conditions of probation were the requirements that defendant "not violate any criminal statute of any jurisdiction" and that defendant not possess, use, or consume alcoholic beverages or illegal drugs.

¶ 5        Approximately six months after defendant pled guilty, the State moved to revoke his probation. The petition to revoke alleged that defendant violated four specific conditions of his probation, including the prohibition on the use of alcohol and drugs. The State alleged that defendant violated those conditions by using cocaine, marijuana, and alcohol; failing to report to probation on five occasions; failing to reside at an approved address; and failing to undergo substance abuse treatment. The petition to revoke did not allege that defendant committed any criminal offenses. Defendant admitted to the allegations in the State's petition.

¶ 6        At the ensuing sentencing hearing, probation officer Scott Moon testified that while on probation defendant missed a number of appointments and "continually tested positive for various illegal drugs." Defendant reported that he was living with his sister, but Moon was never able to locate defendant at that address. Defendant was not approved to live at the home of his girlfriend, Tamara Goss, because she also suffered from legal and substance abuse problems.

Moon testified he raised the idea of entering drug court to defendant. Moon described

defendant's response to that suggestion:

> "[He stated] he does not believe he needs to follow any of the rules of drug court
>
> or probation, that in his words all the rules were 'bullshit' and that he wasn't
>
> going to do anything associated with what probation or drug court would expect
>
> of him."

¶ 7    The parties agreed that defendant was extended-term eligible based on his criminal

history, and the prosecutor noted that the current offense had been committed while defendant

was released on parole. The State acknowledged defendant's substance abuse problems, but

argued that not all of his shortcomings could be attributed to his addictions, and that his criminal

history warranted a greater sentence. The State urged that defendant was "incapable of not

violating the law."

¶ 8    In mitigation, defense counsel argued that defendant did not cause or threaten serious

harm with his actions. Counsel conceded the extensive criminal history, but argued that history

alone would not justify a long sentence, particularly given the relatively small amount of cocaine

at issue in this case. In allocution, defendant accepted responsibility for the offense and

acknowledged that he was a drug addict.

¶ 9    The court imposed an extended-term sentence of six years' imprisonment. In so doing,

the court speculated about the sentence defendant might have received had probation not

originally been available, then stated the basis for its sentencing decision:

> "You know, if probation wasn't an option when you entered into this plea
>
> agreement I think in late 2016, I think that's what it was, you know, you would
>
> have gotten a lot less time but when you get—when you get the opportunity to

show the Court and show society and show probation that you're serious about complying with the rules of society *** [and] you flagrantly thumb your nose at the restrictions and conditions and requirements, that hurts you. I don't throw that aside and say, well, that's not relevant. That is relevant to me. It tells me that, you know, maybe we all just need a little break from [defendant]. And what I mean by that is *** you did waste probation's time and you probably wasted your own time I think because you're going to have a lot more time as a result in this case in terms of DOC time.

So I'm going to sentence you to—you know, I mean, this isn't just about this $20 cocaine. It's about all the failed drug tests, the games that apparently were played with your place of residence and on and on and on."

In response to the court's comments, defendant insisted that he had, in fact, been living at his sister's address while on probation, and that Moon's implication to the contrary was inaccurate. The court responded to that by telling defendant that its "primary concern" was not his living situation, but his admission to consuming drugs on multiple occasions while on probation.

¶ 10    Defendant filed a motion to reconsider sentence alleging that he had lived with his sister during the required time periods and that the court had erred in implying otherwise. The motion asserted that defendant's sister would testify that he had lived with her. Following a hearing, the court reduced defendant's sentence to 5½ years' imprisonment. In imposing the new sentence, the court commented:

"The one argument about going from probation to max, I kind of think when you are cut a break which he, I think he was cut a break given his history when he was given probation in this case given his extensive history, when you're cut a break

4

like that and then you flagrantly, you know, violate the conditions and restrictions imposed upon you, you've got a much bigger downside than you would have had had this Court just sentenced you originally under the original charge. So there's some risk when you go on probation that if you violate, this judge is going to penalize you because you got a break in the first place and you didn't take advantage of it. Instead, you flagrantly disregarded it like you have in the past."

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, defendant raises a solely procedural challenge: that the court abused its discretion by improperly punishing him for his conduct on probation rather than for the underlying offense of unlawful possession of a controlled substance. Notably, however, he does not argue that his ultimate sentence of 5½ years is unreasonable or excessive. Defendant concedes that he failed to preserve this issue for appellate review, and thus asks that we consider the issue under the second prong of plain error.

¶ 13        The first step in any plain error review is a determination of whether "clear or obvious error" was committed. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Thus, we begin by determining whether it is clear or obvious that the court abused its discretion in sentencing defendant. Only if such error is found need we proceed to a second-prong analysis. *Id*.

¶ 14        In sentencing a defendant, the circuit court must consider both the seriousness of the offense as well as the defendant's rehabilitative potential. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); Ill. Const. 1970, art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."). When sentencing a defendant following the revocation of probation, the court "may never punish a defendant for the conduct that gave rise to the probation violation." *People*

*v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). It may nevertheless consider that conduct as evidence of the defendant's rehabilitative potential. *People v. Witte*, 317 Ill. App. 3d 959, 963 (2000).

¶ 15    When a sentence falls within the prescribed statutory range, a reviewing court may not overturn that sentence absent an abuse of the circuit court's discretion. *E.g.*, *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). The court abuses its discretion where its ruling is arbitrary, fanciful, or where no reasonable person would take the view adopted by the court. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). Such an abuse of discretion may be found where "the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *People v. Young*, 138 Ill. App. 3d 130, 142 (1985). "[T]he record must clearly show that the court considered the original offense." *People v. Hess*, 241 Ill. App. 3d 276, 284 (1993).

¶ 16    The circuit court in this case unquestionably placed great emphasis on defendant's probation violation. Nearly the entirety of the court's commentary—at both the initial sentencing and upon defendant's motion to reconsider sentence—was dedicated to the violation of probation. In fact, the court stated explicitly that defendant was receiving a more severe sentence than he would have received initially if probation had not been available.

¶ 17    Those facts, however, are not dispositive. The circuit court *is* allowed to consider a probation violation as evidence of rehabilitative potential when fashioning a new sentence. *Witte*, 317 Ill. App. 3d at 963. In fact, where a sentence is to be fashioned based upon the seriousness of the offense as well as the offender's rehabilitative potential, it would be surprising if the court did *not* discuss defendant's probation violation since a defendant's *cooperation*—or lack

6

thereof—with a probation department may speak directly to his willingness and ability to be rehabilitated. It follows that while a court may not punish a defendant for the conduct giving rise to his probation violation, it may impose a greater sentence if it concludes the fact of the violation is itself indicative of a lack of rehabilitative potential.

¶ 18      The present case is an extremely close one. The distinction between punishing conduct and penalizing a lack of rehabilitative potential is inherently a subtle one. Where such a fine distinction is concerned, divining the sentencing court's intent through review of a cold record will always present difficulties. The circuit court's wide-ranging comments in this case only compound those difficulties. Certain of those statements, taken in isolation, could be read to support affirming the court's sentence, while others would seem to support reversal. It is thus not helpful for us to parse each individual statement the court made. Rather, we must try to discern the actual basis for the court's imposition of the specific sentence.

¶ 19      In this appeal, we are thus tasked only with determining whether the gravamen of the court's comments indicates that the term of imprisonment was based upon the seriousness of defendant's criminal history and his demonstrated lack of rehabilitative potential. Only if we are "strongly persuaded" that the court instead imposed its sentence as a punishment for defendant's conduct will we vacate the sentence. See *Young*, 138 Ill. App. 3d at 142.

¶ 20      For context, we first note that revocation throws the court and parties back to a pre-probation sentencing situation. In this case, defendant's criminal offense involved a small amount of cocaine but, because of his extensive criminal history, he was, as agreed by the parties on the record, eligible for extended sentencing up to six years. In addition, this crime was committed while defendant was on parole from prison for a prior crime. Probation and the possibility of a lenient sentence were once again included in the trial court's range of options. As

7

the court noted, probation had been tried as an opportunity for defendant to show he was serious about conforming to the rules of society and he had instead demonstrated by word and deed that he had no intention of even attempting such conformity. This was the situation at the time of the resentencing.

¶ 21    It is notable that in this case defendant was not charged with violating his probation by committing a new criminal offense. Rather, the claimed violation was the flouting of the fundamental conditions of that probation. The petition to revoke alleged that defendant consumed drugs and alcohol, missed probation appointments, did not live at an address approved by the probation department, and failed to enroll in substance abuse treatment. None of these was asserted as a criminal offense in the petition to revoke probation, and none is, without more, inherently the type of delinquent conduct the criminal justice system tends to punish.

¶ 22    Rather than condemning defendant's conduct, the gist of the court's comments evinces a condemnation of defendant's attitude. Nowhere is this more apparent than when the court suggested that probation had given defendant an opportunity to demonstrate that he could comply with the rules of society, but instead defendant had "flagrantly thumb[ed] [his] nose at the restrictions and conditions and requirements" of his probation. This comment was supported by Moon's testimony, which established not only that defendant had violated probation, but had stated that he had no intention of following the rules of probation or drug court (which Moon had broached as a potential benefit to defendant in the future).

¶ 23    The circuit court, in its extensive comments, vigorously criticized defendant for the actual conduct giving rise to his probation violation—the use of drugs, the missed appointments, and the seeming lies about his address—but did not definitively attribute the longer sentence to that conduct. Instead, the court appeared to ground its sentencing decision in its perception that

defendant had been given an opportunity, through probation, to demonstrate his rehabilitative potential and had instead demonstrated a lack of such potential by his cavalier attitude toward compliance with the restrictions and conditions of probation. On these facts and in light of the extreme deference demanded by our standard of review, we find that the essence of the court's rationale was properly limited to its consideration of defendant's probation conduct as indicative of his rehabilitative potential. See *Hess*, 241 Ill. App. 3d at 284. As we are not "strongly persuaded" that the circuit court imposed a punishment for defendant's conduct while on probation, we cannot find that the court abused its discretion. *Young*, 138 Ill. App. 3d at 142. We therefore need not proceed further in our plain error analysis. *Piatkowski*, 225 Ill. 2d at 565.

¶ 24                                    III. CONCLUSION

¶ 25        The judgment of the circuit court of Tazewell County is affirmed.

¶ 26        Affirmed.

¶ 27        JUSTICE WRIGHT, specially concurring:

¶ 28        I concur in all aspects of the author's analysis with two exceptions. First, contrary to the assertion in paragraph 21, paragraph 3(A) of the amended petition alleges defendant consumed cocaine on five occasions during this term of probation. Consumption of cocaine requires possession of cocaine, which is a criminal offense.

¶ 29        Second, I also take exception to the observation that the trial judge's choice of words made this a close case upon review. The record reveals this offense was committed shortly after defendant completed a six-year sentence in the Illinois Department of Corrections (DOC) for serious felonies involving aggravated fleeing and eluding and possession of a stolen vehicle and defendant was on parole for those offenses at the time of this drug offense. Defendant's prior criminal history includes, but is not limited to, more than 10 prior felony convictions, multiple

9

sentences to the DOC for terms between 3 and 6 years duration, 5 previous and unsuccessfully completed terms of felony probation, plus traffic and misdemeanor convictions too numerous to mention in this short but separate offering. Respectfully, in light of defendant's extensive criminal history, I agree the sentence was warranted for the original offense and should be affirmed. Therefore, I write separately to express my view that upon review, this was not a close call at all.

¶ 30        JUSTICE SCHMIDT, specially concurring:

¶ 31        I join in Justice Wright's special concurrence.